UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| MELANIE DAVIS,<br><br>*Plaintiff*,<br><br>v.<br><br>JACKIE FITZER; AND STACY FODNESS,<br><br>*Defendants* | Case No. _____<br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiff Melanie Davis, by and through the undersigned counsel, brings this action against Jackie Fitzer, an individual, and Stacy Fodness, an individual, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this civil rights action against Defendants for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities.

2. Defendants own and operate the clothing store known as "Plato's Closet", which to the extent it was constructed and first occupied after January 26, 1993 or was altered after January 26, 1993 was required to be designed and constructed to be readily accessible to persons with disabilities. To the extent "Plato's Closet" was not constructed or altered before January 26, 1993, Defendants were required to remove barriers to access to the extent barrier removal was readily achievable. "Plato's Closet" contains architectural barriers to accessibility.

3. The violations alleged in this complaint occurred at "Plato's Closet", located at 14528 W Center Rd, Omaha, NE 68144.

4. Defendants' failure to provide equal access to "Plato's Closet" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

5. Defendants' conduct constitutes an ongoing and continuous violation of the law.

6. Accordingly, Plaintiff seeks a declaration that Defendants' facilities violate federal and an injunction requiring Defendants to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendants continue to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

8. Venue in this judicial district is proper because Defendants are located and transact business within this judicial district and have sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

9. Plaintiff Melanie Davis is a resident of Omaha, Nebraska. Plaintiff Davis grew up in Omaha, Nebraska and lived there until she moved to Minnesota in 2005. While living in Minnesota, she visited Omaha many times, including five visits in 2016-2017. She moved back to Omaha in 2017, where she now resides.

10. Plaintiff Melanie Davis suffers from, and all times relevant hereto has suffered from, Cerebral Palsy, a condition that substantially limits her ability to walk and stand and is therefore a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq*. As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

11. Defendant Jackie Fitzer, an individual, and Defendant Stacy Fodness, an individual, are the operators and lessees of the real property and improvements which are the subject of this action, the clothing store known as "Plato's Closet", a place of public accommodation within the meaning of the ADA, located at the street address of 14528 W Center Rd, Omaha, NE 68144.

## FACTUAL BACKGROUND

12. Plaintiff Davis attempted to patronize the retail store known as "Plato's Closet" in Omaha, Nebraska on February 21, 2018. Plaintiff frequently shops at "Plato's Closet", visiting approximately once every two months.

13. When Plaintiff entered "Plato's Closet" she found that the low sales counter was not available for use as a point of sale and was in use as a staging area for folding

clothes. This had been the situation on Plaintiff's many other visits to "Plato's Closet". On multiple occasions Plaintiff has observed individuals coming in and dropping off

14. When Plaintiff used the restroom she discovered that the grab bar in the accessible stall was loose.

15. The paper towel dispenser in the "Plato's Closet" restroom was situated less than 12 above the grab bar.

16. Plaintiff found that the accessible dressing room was obstructed by merchandise that had been tried on by other customers, and other items used by "Plato's Closet" employees. A nearby sign directed against placing things in the dressing room, but the practice of using the area directly outside the accessible dressing room as a storage area had continued over Plaintiff's many visits to "Plato's Closet".

17. Photographs in Exhibit A to the Complaint depict "Plato's Closet" as it appeared on February 21, 2018.

18. In light of the architectural barriers at "Plato's Closet", Plaintiff Davis is deterred from visiting "Plato's Closet" in the future. Plaintiff Davis intends to return to "Plato's Closet", but these architectural barriers deter her from doing so. She plans to return and patronize "Plato's Closet" when she learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

19. Plaintiff Davis is a resident of Omaha, Nebraska, and she plans to continue visiting local Omaha businesses in the future. She would enjoy being able to patronize "Plato's Closet" in the future.

20. Plaintiff Davis attempted to access Defendants' premises, but could not do so independently on a full and equal basis because of her disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendants' premises. As a result of Defendants' non-compliance with the ADA, Plaintiff Davis cannot independently

access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

21. On July 26, 1990, Presiadent George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

   c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

   d. Individuals with disabilities continually encounter various forms of discrimination; and

   e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

22. Congress explicitly stated that the purpose of the ADA was to:

   a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

   b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

   c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

23. Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

24. The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

25. Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26,

1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

26. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

27. In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

28. The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

29. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

30. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

31. The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

32. Defendants have discriminated against Plaintiff on the basis of her disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Plato's Closet". A specific, though not exclusive, list of unlawful physical barriers

and ADA violations present at "Plato's Closet" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

> a. On Plaintiff's many visits, "Plato's Closet" had a sales counter compliant with ADAAG 904.4, but it was not used as a point of sale, showing a failure to maintain accessible features, in violation of 28 C.F.R. § 36.211. This failure was a policy, practice or procedure that created a violation of ADAAG 227 and 904.4 and was a violation of 28 C.F.R. § 36.302.
>
> b. On Plaintiff's many visits, "Plato's Closet" allowed clothing and other items to accumulate around the accessible dressing room area in a way that obstructed and prevented wheelchair access to the accessible changing room by reducing width of the accessible route to less than 36 inches. This failure was a policy, practice or procedure that created a violation of ADAAG 206.2.2 and 403.5.1 and was a violation of 28 C.F.R. § 36.302.
>
> c. The grab bar in the "Plato's Closet" restroom was loose and could not support 250 pounds, in violation of ADAAG 609.8. Plaintiff needs a secure grab bar in order to safely transfer from her wheelchair to the toilet and back again.
>
> d. The paper towel dispenser in the "Plato's Closet" restroom was less than 12 inches above the grab bar, in violation of ADAAG 609.3.

33. The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "Plato's Closet". To qualify as an accessible parking facility, and for a parking space to qualify an accessible parking space, the space must be located on an accessible route, the route must be the

shortest accessible route, the space must be marked by appropriate signage, the space must be flanked by an access aisle, and the space and access aisle must comply with sloping requirements. ADAAG 206; 208; 216, Chapter 4 including but not limited to 402, 403, 404, 405, and 406; and 502 – including, but not limited to, 502.4 which governs the floor or ground surfaces of both parking spaces and access aisles.

34. In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "Plato's Closet" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

35. Compliance with the ADA standards, and the ADAAG is required by 42 U.S.C §§ 12182 and 12183 to the extent the facility was designed and constructed or altered after January 26, 1993, and the violations to the ADAAG requirements are not a result of compliance being structurally impracticable. 28 C.F.R § 36.401(a)(1).

36. In the alternative, to the extent any architectural elements were constructed prior to that date, compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendants due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

37. Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and

alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

38. As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

39. Without injunctive relief, Defendants' failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to independently access "Plato's Closet" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of her rights under the ADA.

## FIRST CAUSE OF ACTION
**Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.***

40. Plaintiff incorporates and realleges the above paragraphs.

41. Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from

the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

43. Defendants have discriminated against Plaintiff and others in that they failed to make their place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Davis has been denied full and equal access to "Plato's Closet" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

44. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendants' violations of the ADA and ADAAG are ongoing.

45. Defendants have failed to design and construct "Plato's Closet" in accordance with the ADAAG to the maximum extent feasible.

46. In the alternative, Defendants failed to remove architectural barriers to full and equal access by Plaintiff Davis, even though removing the barriers was required and is readily achievable.

47. Plaintiff Davis plans to visit "Plato's Closet" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm upon her planned return visit to "Plato's Closet" unless and until Defendants are required to remove the physical barriers to access and ADA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

48. This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendants to make "Plato's Closet" readily ac-

cessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Plato's Closet" until such time as Defendants cure the access barriers.

49. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendants, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

a. Plaintiff demands a trial in Omaha, Nebraska.
b. That the Court issue a Declaratory Judgment that determines that Defendants' facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.
c. That the Court award nominal damages.
d. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendants from continuing their discriminatory practices; including an order directing Defendants to remove all barriers to the maximum extent feasible or in the alternative make all readily achievable alterations to their facilities so as to remove physical barriers to access and make their facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendants to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

- 13 -

e. That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

f. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

DATED: June 6, 2018

/s/ Padraigin L. Browne
Padraigin L. Browne (MN Bar # 389962)
Browne Law LLC
8530 Eagle Point Blvd, suite 100
Lake Elmo, MN 55042
E-mail: paddy@brownelawllc.com
Phone: (612) 293-4805